FILED
2022 Sep-15  PM 04:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **TERRY LEE HAWKINS, JR.** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| **v.** | ] |
| | ] |
| **DANIEL HOLCOMB**; Individually, and in | ] |
| his capacity of a Cherokee County, Alabama | ] |
| Deputy Sheriff; **SETH BISHOP** | ] |
| Individually and in his capacity as a member | ] |
| of the Cedar Bluff, Alabama Police | ] |
| Department; **MICHAEL KILGORE**, | ] |
| Individually and in his capacity as a member | ] |
| of the Centre, Alabama Police Department; | ] |
| **EMILY TROXTEL**, Individually, and as | ] |
| a member of the Centre, Alabama Police | ] |
| Department; **LEESBURG, ALABAMA**, | ] |
| a municipal corporation; **CEDAR BLUFF**, | ] |
| **ALABAMA**, a municipal corporation, | ] |
| **CENTRE, ALABAMA**, a municipal | ] |
| corporation; **FICTITIOUS DEFENDANT** | ] |
| **A**, a member of the Leesburg, Alabama | ] |
| Police Department; **FICTITIOUS** | ] |
| **DEFENDANT B**; a member of the | ] |
| Leesburg, Alabama Police Department; | ] |
| **FICTITIOUS DEFENDANT C**; a member | ] |
| of the Cherokee County Sheriff's | ] |
| Department; **FICTITIOUS DEFENDANT** | ] |
| **D**; a member of the Cherokee County | ] |
| Sheriff's Department; **Sheriff Jeff Shaver**, | ] |
| in his capacity as Chief Policy Maker for the | ] |
| Cherokee County, Alabama | ] |
| | ] |
| **Defendants.** | ] |

## COMPLAINT

COMES NOW, Terry Lee Hawkins, Jr. ("Plaintiff Hawkins"), and files the following Complaint against the named and fictitiously named defendants herein:

## JURISDICTION

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because Plaintiff Hawkins's claims of violations of his constitutional rights are brought pursuant to 42 U.S.C. § 1983.  This Court further may exercise supplemental jurisdiction over Plaintiff Hawkins's state law claims pursuant to 28 U.S.C. § 1367(a).

## VENUE

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2) because all of the complained of acts of malfeasance on the part of each and every defendant named herein occurred in the geographic location, namely Centre, Alabama within the Court's District. Further, each named defendant is subject to personal jurisdiction in this District.

## PARTIES

1.      Plaintiff **Terry Lee Hawkins ("Plaintiff Hawkins")**, at all times relevant and material, was and is a resident of the State of Alabama.  Plaintiff Hawkins was subjected to unnecessary, excessive and unreasonable force on September 4, 2022.

2.      Defendant **Daniel Holcomb ("Defendant Holcomb")**, at all times relevant and material, was acting under the color of state law, was a law enforcement officer

certified under the standards of the Alabama Police Standards and Training ("APOST"). At all times relevant and material, Defendant Holcomb was employed by the Cherokee County Sheriff's Office.

3.     Defendant **Seth Bishop ("Defendant Bishop")**, at all times relevant and material, was acting under the color of state law, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST"). At all times relevant and material, Defendant Bishop was employed by the Cedar Bluff, Alabama Police Department.

4.     Defendant **Michael Kilgore ("Defendant Kilgore")**, at all times relevant and material, was acting under the color of state law, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST"). At all times relevant and material, Defendant Kilgore was employed by the Centre, Alabama Police Department.

5.     Defendant **Emily Troxtel ("Defendant Troxtel")**, at all times relevant and material was acting under state, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST"). At all times relevant and material, Defendant Troxtel was employed by the Centre, Alabama Police Department.

6.     Defendant **Michael Kilgore ("Defendant Kilgore")**, at all times relevant and material, was a law enforcement officer certified under the standards of the Alabama

Police Standards and Training ("APOST").  At all times relevant and material, Defendant Kilgore was employed by the Centre, Alabama Police Department.

7.      **Fictitious Defendant A ("FDA")**, whose identity is unknown at this time, at all times relevant and material, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST").  At all times relevant and material, FDA was employed by the Leesburg, Alabama Police Department.

8.      **Fictitious Defendant B ("FDB")**, whose identity is unknown at this time, at all times relevant and material, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST").  At all times relevant and material, FDB was employed by the Leesburg, Alabama Police Department.

9.      **Fictitious Defendant C ("FDC")**, whose identity is unknown at this time, at all times relevant and material, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST").  At all times relevant and material, FDC was employed by the Cherokee County, Alabama Sherriff's Department.

10.     **Fictitious Defendant D ("FDD")**, whose true identity is unknown at this time, at all times relevant and material, was a law enforcement officer certified under the standards of the Alabama Police Standards and Training ("APOST").  At all

times relevant and material, FDD was employed by the Cherokee County, Alabama Sheriff's Department.

11.     **Defendant Leesburg, Alabama ("Defendant Leesburg")** is a municipal corporation organized under the laws of the State of Alabama.  Defendant Leesburg maintains a police department as part of its governmental makeup.

12.     **Defendant Cedar Bluff, Alabama ("Defendant Cedar Bluff")** is a municipal corporation organized under the laws of the State of Alabama.  Defendant Cedar Buff maintains a police department as part of its governmental makeup.

13.     **Defendant Centre, Alabama ("Defendant Centre")** is a municipal corporation organized under the laws of the State of Alabama.  Defendant Centre maintains a police department as part of its governmental makeup.

14.     **Defendant Jeff Shaver ("Defendant Shaver")** is the chief law officer of Cherokee County, Alabama; responsible for hiring, training and policy of deputies employed by the Cherokee County, Alabama Sheriff's Department.

## FACTUAL ALLEGATIONS

15.     The conduct of visited upon Plaintiff Hawkins was unjustified, unprovoked, and grossly disproportionate and amounted to the use of excessive force in violation of Plaintiff Hawkins's clearly established Fourth Amendment rights.

16.     Therefore, all parties named herein are jointly and severally liable for the excessive force used against Plaintiff Hawkins on September 4, 2022.

17.    The actions of all parties named herein were unjustified, unprovoked, and objectively unreasonable and constitute a violation of their rights under the Fourth Amendment to be free from the use of excessive force.

18.    Further, police officers and deputies employed by both Defendant Centre, the Cherokee County, Alabama Sheriff Department Defendant Cedar Bluff, and Defendant Leesburg failed to intervene and stop the violations of Plaintiff Hawkins's constitutional rights.

19.    Police officers and deputies on the scene failed to stop the repeated use of unconstitutional force visited upon Plaintiff Hawkins.

20.    The unconstitutional actions complained of herein became known to, among others Defendant Centre, the Cherokee County, Alabama Sheriff Department Defendant Cedar Bluff, and Defendant Leesburg, who failed to adequately investigate this matter.

21.    Therefore, Defendant Centre, the Cherokee County, Alabama Sheriff Department, Defendant Cedar Bluff, and Defendant Leesburg approved, ratified, and knowingly acquiesced in the conduct described herein in all respects.

22.    The defendants named herein, individually, and in concert with each other acted under the color of law in their official capacities, to deprive Plaintiff Hawkins of his rights and freedom from unreasonable seizure and the use of unnecessary, unjustified excessive force; said rights secured to Plaintiff Hawkins by the Fourth

Amendment to the Constitution of the United States; and by 42 U.S.C. §§ 1983 and 1988.

23.    The use of excessive force on Plaintiff Hawkins was excessive and not objectively reasonable in light of the facts and circumstances as they existed not in hindsight, but as they existed on September 4, 2022.

24.    On an objective basis, no reasonable competent officer on the scene would have concluded that the disputed actions should have been taken against Plaintiff Hawkins.

25.    Defendant Centre is under a duty to run its policing activities in a lawful manner so as to protect not only the peace of Centre, Alabama; but also, to preserve the rights, privileges, and amenities of residents and visitors to Centre, Alabama; as those rights, privileges and amenities are guaranteed and secured to those residents and visitors by the Constitution of the United States, and laws of the State of Alabama.

26.    Defendant Cedar Bluff is under a duty to hire, train and supervise competent law enforcement officers.  Defendant Cedar Bluff is under a duty to run its policing activities in a lawful manner, and to preserve the rights, privileges, and amenities guaranteed and secured to United States citizens by the Constitution and laws of the State of Alabama and to ensure its employed police officers act in the same manner.

27.    Defendant Leesburg is under a duty to hire, train and supervise competent law enforcement officers.   Defendant Leesburg is under a duty to run its policing activities in a lawful manner, and to preserve the rights, privileges, and amenities guaranteed and secured to United States citizens by the Constitution and laws of the State of Alabama; and to ensure its employed police officers act in the same manner.

28.    At all times relevant and material, the defendants herein who are natural persons, including those named fictitiously, were acting by virtue of, and under the color of their offices as law enforcement officers.

29.    On or about September 4, 2022, Plaintiff Hawkins was a patron at Easy Street Restaurant, Bar and Performance Hall, a venue located at 1605 West Main Street Centre, Alabama 35960 ("Easy Street").

30.    On September 4, 2022, Plaintiff Hawkins was attending a live music event at Easy Street with his wife.

31.    Plaintiff Hawkins, at the time of the complained of acts, though having consumed alcohol, was not intoxicated.

32.    Just prior to the occurrence of the complained of acts herein, Plaintiff Hawkins was located at the outside patio seating area of Easy Street.

33.    Upon information and belief, prior to the complained of acts herein, Defendant Holcomb, after first visiting a bar in Gadsden, Alabama where he

consumed alcohol to the point of intoxication, arrived at Easy Street, where he continued to consume alcohol.

34.     Upon information and belief, prior to the complained of acts herein, Defendant Bishop, after first visiting a bar in Gadsden, Alabama where he consumed alcohol to the point of intoxication, arrived at Easy Street with Defendant Holcomb, where he too continued to consume alcohol.

35.     At some point just prior to the occurrence of the complained of acts, Plaintiff Holcomb's brother-in-law exited the inside of Easy Street where he and Plaintiff Holcomb had a verbal disagreement.  No punches were thrown, and no physical altercation occurred.

36.     Plaintiff Holcomb encountered Defendant Kilgore in the parking lot of Easy Street, where without provocation or probable cause, Defendant Kilgore deployed his Taser into the person of Plaintiff Holcomb causing Plaintiff Holcomb to lose muscle control and fall to the ground.

37.     Plaintiff Hawkins fell to the ground after being tased by Defendant Kilgore, and Plaintiff Hawkins was then restrained face-down with his arms secured behind his back by law enforcement.

38.     During this time, the prongs of Defendant Kilgore's Taser remained embedded in the body of Plaintiff Hawkins.

39.     While Defendant Kilgore's prongs remained embedded in Plaintiff Hawkins's body as he lay face-down on the ground with two law enforcement officers having a knee in his back and his arms bound behind him, a drunken and intoxicated Defendant Holcomb stumbled over and began delivering punches and elbow shots to the back of Plaintiff Hawkins's head.

40.     While Defendant Kilgore's prongs remained embedded in Plaintiff Hawkins's body as he lay face-down on the ground with two law enforcement officers having a knee in his back and his arms bound behind him, a drunken and intoxicated Defendant Bishop began delivering punches to the body of Plaintiff Hawkins.

41.     The blows by Defendant Holcomb continued unimpeded until Defendant Holcomb stood, and drunkenly staggered away:



42.    After the defendants concluded their unconstitutional acts, Plaintiff Hawkins was transported to Defendant Centre's police station where he was issued citations by Defendant Troxtel for "resisting arrest" and "disorderly conduct" and then given a $300.00 appearance bond.

43.    On September 4, 2022, Plaintiff Hawkins was subjected to excessive force at the hands and elbows of Defendant Holcomb.

44.    On September 4, 2022, Plaintiff Hawkins was subject to excessive force at the hands of Defendant Bishop.

45.    On September 4, 2022, Plaintiff Hawkins was subject to excessive force at the hands of Defendant Kilgore.

46.    On September 4, 2022, Defendant Troxtel did not intervene to stop the use of excessive force by Defendant Holcomb, nor Defendant Bishop, nor Defendant Kilgore.

47.    On September 4, 2022, Defendant Bishop did not intervene to stop the use of excessive force upon Plaintiff Hawkins by Defendant Holcomb.

48.    On September 4, 2022, Defendant Kilgore did not intervene to stop the use of excessive force upon Plaintiff Hawkins by Defendant Holcomb.

49.    On September 4, 2022, FDA did not intervene to stop the use of excessive force upon Plaintiff Hawkins by Defendant Holcomb, nor Defendant Bishop, nor Defendant Kilgore.

50.    On September 4, 2022, FDB did not intervene to stop the use of excessive force upon Plaintiff Hawkins by Defendant Holcomb, nor Defendant Bishop, nor Defendant Kilgore.

51.    On September 4, 2022, FDC did not intervene to stop the use of excessive force upon Plaintiff Hawkins by Defendant Holcomb, nor Defendant Bishop, nor Defendant Kilgore.

52.    On September 4, 2022, FDD did not intervene to stop the use of excessive force upon Plaintiff Hawkins by Defendant Holcomb, nor Defendant Bishop, nor Defendant Kilgore.

53.    None of the officers on the scene, during the events that give rise to this lawsuit, acted to intervene against the unconstitutional and unlawful acts of their fellow officers though they each at the means to do so.

54.    Hence, this lawsuit.

## COUNT I
## Battery as to Defendant Holcomb

55.    In addition to the preceding allegations, Plaintiff Hawkins further alleges:

56.    Defendant Holcomb is liable for the battery he committed upon the person of Plaintiff Hawkins in the parking lot of Easy Street on September 4, 2022.

57.    Specifically, Defendant Holcomb, with his elbow repeated struck the head and neck area of Plaintiff Hawkins while Plaintiff Hawkins was restrained by law enforcement officers with his hand bound behind his back.

58.    The striking of Plaintiff Hawkins by Defendant Holcomb with his elbow and fist was unwanted by Plaintiff Hawkins and was visited upon Plaintiff Hawkins without his consent.

59.    Bystander videos exists of Defendant Holcomb's action and one such still frame shows an intoxicated Defendant Holcomb delivering multiple blows with his elbow and fist to a restrained Plaintiff Hawkins:



60.    Specifically, Defendant Holcomb with his elbow and fist repeated struck the head and neck area of Plaintiff Hawkins while Plaintiff Hawkins was restrained by law enforcement officers with his hand bound behind his back.

61.    The striking of Plaintiff Hawkins by Defendant Holcomb with his elbow and fist was unwanted by Plaintiff Hawkins and was visited upon Plaintiff Hawkins without his consent.

62.     Plaintiff Hawkins suffered and suffersactual and real injuries in the form of bruising, lacerations, blurred vision, headaches, emotional distress, mental anguish, and pain and suffering.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Hawkins prays for judgment against Defendant Holcomb both compensatory and punitive in nature in an amount to be determined by a struck jury.

## COUNT II
## Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to Defendant Kilgore

63.     Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

64.     Defendant Kilgore, acting under the color of state law at all times relevant on September 4, 2022.

65.     Defendant Kilgore is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by his fellow officers.

66.     Defendant Kilgore was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb and Defendant Bishop when Defendant Holcomb repeatedly struck Plaintiff Hawkins with his fist and elbow on the back of Plaintiff Hawkins's neck and Defendant Bishop delivered blows while Plaintiff Hawkins was restrained on face down on the ground, arms bound and two (2) officers with knees in Plaintiff Hawkins's back.

67.     Despite Defendant Kilgore being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant Kilgore not only failed to intervene though he was in a position to do so, but he also encouraged and ratified the unconstitutional actions of Defendant Holcomb and Defendant Bishop against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

68.     In failing to stop the unconstitutional actions of Defendant Holcomb and Defendant Bishop despite being in a position to do so, Defendant Kilgore acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

69.     As a direct and proximate result of the violations of his constitutional rights and Defendant Kilgore's deliberate indifference to the unconstitutional actions against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

## COUNT III
### Violation of Fourth Amendment Rights and Guarantees & Deprivation of Constitutional Rights as to Defendant Kilgore

70.     Without waive of any preceding allegation, Plaintiff Hawkins further alleges:

71.     In committing the acts complained of herein, Defendant Kilgore deprived Plaintiff Hawkins of his clearly established constitutionally protected rights under

the Fourth Amendment of the United States Constitution, including but not limited to:

      a)     Freedom from unreasonable seizure;

      b)     The right to be free from unreasonable searches;

      c)     Freedom from the use of unreasonable, unjustified and excessive force;

      d)     Freedom from deprivation of liberty and property without due process of law;

      e)     Freedom from summary punishment;

      f)     Freedom from the prevention of officers from using excessive force; and

      g)     Freedom from arbitrary governmental activity that shocks the conscience of a civilized society.

61.    In violating Plaintiff Hawkins's rights as set forth above, specifically twice deploying his Taser into the person of Plaintiff Hawkins, Defendant Kilgore acted under the color of state law and conducted an unreasonable seizure of Plaintiff Hawkins; and used unnecessary, excessive, and unreasonable force.

62.    Defendant Kilgore, without provocation or reason, twice deployed his defensive Taser weapon into the person of Plaintiff Hawkins on September 4, 2022.

63.    Defendant Kilgore carried this act out in the presence of numerous other police officers and civilian witnesses.

64.     Defendant Kilgore deployed his Taser into Plaintiff Hawkins while Plaintiff

Hawkins was restrained and not resisting the unlawful arrest in any manner.

65.     Bystander video of the event giving rise to this lawsuit exists, and still frames

from said videos shows Defendant Kilgore using his Taser on the restrained Plaintiff

Hawkins:



66.     Plaintiff Hawkins, neither before not at the time Defendant Kilgore violated

his Fourth Amendment rights, had or was committing any crime.

67.    At the time that his Fourth Amendment rights were violated by Defendant Kilgore, Plaintiff Hawkins was not a threat to Defendant Kilgore, nor any other police officer present, or to the general public.

68.    At the time that Defendant Kilgore used excessive force upon Plaintiff Hawkins, in violation of his Fourth Amendment rights, Defendant Kilgore had more than enough time to determine that Plaintiff Hawkins was not a threat to him, other officers or the general public.

69.    At the time that Defendant Kilgore used excessive force on Plaintiff Hawkins, it should have been clear to a reasonable officer at the scene on September 4, 2022, that the type and amount of force used and directed on Plaintiff Hawkins by Defendant Kilgore, specifically deploying his Taser twice on Plaintiff Hawkins was unreasonable given that Plaintiff Hawkins was not a threat, was not under arrest, and was restrained by Defendant Kilgore's fellow officers.

70.    The actions of Defendant Kilgore against Plaintiff Hawkins in twice deploying his Taser against a noncombative, non-threatening person were not reasonable under the circumstances based on the perspective of a reasonable officer at the scene.

71.    Further, the acts committed by Defendant Kilgore against Plaintiff Hawkins occurred in the presence of other named and unnamed police officers.

72.     As a result of the acts complained of in this Count, Plaintiff Hawkins suffered and continues to suffer injury.

**COUNT IV**
**Violation of Fourth Amendment Rights and Guarantees & Deprivation of Constitutional Rights as to Defendant Holcomb**

73.     Without waiver of any preceding allegation, Plaintiff Hawkins further alleges:

74.     In committing the acts complained of herein, Defendant Holcomb deprived Plaintiff Hawkins of his clearly established constitutionally protected rights under the Fourth Amendment of the United States Constitution, including but not limited to:

> a)     Freedom from unreasonable seizure;
>
> b)     The right to be free from unreasonable searches;
>
> c)     Freedom from the use of unreasonable, unjustified and excessive force;
>
> d)     Freedom from deprivation of liberty and property without due process of law;
>
> e)     Freedom from summary punishment;
>
> f)     Freedom from the prevention of officers from using excessive force; and
>
> g)     Freedom from arbitrary governmental activity that shocks the conscience of a civilized society.

75.    In violating Plaintiff Hawkins's rights as set forth above, Defendant Holcomb acted under the color of state law and conducted an unreasonable seizure of Plaintiff Hawkins; and utilized unnecessary, excessive, and unreasonable force.

76.    Defendant Holcomb, while in an intoxicated state, without provocation or reason, used bodily force against Plaintiff Hawkins by repeatedly striking Plaintiff Hawkins with his fist and elbow while Plaintiff Hawkins was lying on the ground, restrained with his arms bound behind his back, being tased by Defendant Kilgore while two (2) law enforcement officers had knees in Plaintiff Hawkins's kidney area.

77.    Defendant Holcomb carried this act out in the presence of numerous other police officers and civilian witnesses.

78.    Plaintiff Hawkins, neither before not at the time Defendant Holcomb violated his Fourth Amendment rights had or was committing any crime.

79.    At the time that his Fourth Amendment rights were violated by Defendant Kilgore, Plaintiff Hawkins was not a threat to Defendant Holcomb, nor any other police officer present, or to the general public.

80.    At the time that Defendant Holcomb used excessive force upon Plaintiff Hawkins, in violation of his Fourth Amendment rights, Defendant knew or should have known that Plaintiff Hawkins was not a threat to him, other officers or the general public.

81.    At the time that Defendant Holcomb used excessive force on Plaintiff Hawkins, it should have been clear to a reasonable officer at the scene on September 4, 2022 that the type and amount of force used and directed on Plaintiff Hawkins by Defendant Holcomb, specifically delivering repeated blows to the back of Plaintiff Hawkins's head, that Plaintiff Hawkins was unreasonable given that Plaintiff Hawkins was not a threat, was not under arrest, and was restrained by Defendant Holcomb's fellow officers.

82.    The afore-described actions of Defendant Holcomb against Plaintiff Hawkins were not reasonable under the circumstances based on the perspective of a reasonable officer at the scene.

83.    As a result of the acts complained of in this Count, Plaintiff Hawkins suffered and continues to suffer injury.

### COUNT V
### Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to Defendant Troxel

85.    Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

86.    Defendant Troxel was acting under the color of state law at all times relevant on September 4, 2022.

87.    Defendant Troxel is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by her fellow officers.

88.    Defendant Troxel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb when Defendant Holcomb repeatedly struck Plaintiff Hawkins with his fist and elbow on the back of Plaintiff Hawkins's neck and head while Plaintiff Hawkins was restrained on face down on the ground, arms bound and two (2) of Defendant Holcomb's fellow officers with knees in Plaintiff Hawkins's back.

89.    Despite Defendant Troxel being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant Troxel not only failed to intervene though she was in a position to do so, but she also encouraged and ratified the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

90.    Bystander videos of the events giving rise to this lawsuit exist.

91.    A still frame of one such video shows Defendant Troxel standing over Plaintiff Hawkins with her arms folded as Defendant Holcomb violates the constitutional rights of Plaintiff Hawkins:



92.    In failing to stop the unconstitutional actions of Defendant Holcomb despite being in a position to do so, Defendant Troxtel acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

93.    As a direct and proximate result of the violations of his constitutional rights and Defendant Troxtel's deliberate indifference to the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

## COUNT VI
## Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to Defendant Troxel

94.    Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

95.    Defendant Troxel was acting under the color of state law at all times relevant on September 4, 2022.

96.    Defendant Troxel is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by her fellow officers.

97.    Defendant Troxel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Kilgore when Defendant Kilgore repeatedly deployed his Taser into Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound and two (2) of Defendant Holcomb's fellow officers with knees in Plaintiff Hawkins's back.

98.    Despite Defendant Troxel being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant Troxel not only failed to intervene though she was in a position to do so, but she also encouraged and ratified the unconstitutional actions of Defendant Kilgore against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

99.    Bystander videos of the events giving rise to this lawsuit exist.

100.   A still frame of one such video shows Defendant Troxtel standing over Plaintiff Hawkins with her arms folded as Defendant Kilgore violates the constitutional rights of Plaintiff Hawkins:



101.   In failing to stop the unconstitutional actions of Defendant Kilgore despite being in a position to do so, Defendant Troxtel acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

102.   As a direct and proximate result of the violations of his constitutional rights and Defendant Troxtel's deliberate indifference to the unconstitutional actions of Defendant Kilgore against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Hawkins demands actual damages both compensatory and punitive in nature from Defendant Troxtel for Count VI in an amount to be determined by a struck jury.

## COUNT VII
### Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to Defendant Troxtel

103.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

104.   Defendant Troxtel was acting under the color of state law at all times relevant on September 4, 2022.

105.   Defendant Troxtel is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by her fellow officers.

106.   Defendant Troxtel was in a position to intervene in the unlawful constitutional violations carried out by Defendant Bishop when Defendant Bishop delivered blows onto Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound and two (2) of Defendant Bishop's fellow officers with knees in Plaintiff Hawkins's back.

107.    Despite Defendant Troxtel being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant Troxtel not only failed to intervene though she was in a position to do so, but she also encouraged and ratified the unconstitutional actions of Defendant Bishop against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

108.    As previously shown, bystander videos of the events giving rise to this lawsuit exist.

109.    A still frame of one such video shows Defendant Troxtel standing over Plaintiff Hawkins with her arms folded as Defendant Bishop violates the constitutional rights of Plaintiff Hawkins:



110. In failing to stop the unconstitutional actions of Defendant Bishop despite being in a position to do so, Defendant Troxel acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

111. As a direct and proximate result of the violations of his constitutional rights and Defendant Troxel's deliberate indifference to the unconstitutional actions of Defendant Bishop against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

**COUNT VIII**
**Violation of Fourth Amendment Rights and Guarantees & Failure to**
**Intervene as to Defendant Bishop**

112.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

113.   Defendant Bishop, though intoxicated, was acting under the color of state law at all times relevant on September 4, 2022.

114.   Defendant Bishop is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by her fellow officers.

115.   Defendant Bishop was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb when Defendant Holcomb delivered blows onto Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound and two (2) of Defendant Bishop's fellow officers with knees in Plaintiff Hawkins's back.

116.   Despite Defendant Bishop being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant Bishop not only failed to intervene though he was in a position to do so, but she also encouraged and ratified the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

117.   In failing to stop the unconstitutional actions of Defendant Holcomb despite being in a position to do so, Defendant Bishop acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

118.   As a direct and proximate result of the violations of his constitutional rights and Defendant Bishop's deliberate indifference to the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

## COUNT IX
### Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to Defendant Bishop

119.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

120.   Defendant Bishop, though intoxicated, was acting under the color of state law at all times relevant on September 4, 2022.

121.   Defendant Bishop is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by his fellow officers.

122.   Defendant Bishop was in a position to intervene in the unlawful constitutional violations carried out by Defendant Kilgore when Defendant Kilgore delivered repeated Taser shocks into Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound and two (2) of Defendant Bishop's fellow officers with knees in Plaintiff Hawkins's back.

123.   Despite Defendant Bishop being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant Bishop not only failed to intervene though he was in a position to do so, but she also encouraged and ratified the unconstitutional actions of Defendant Kilgore against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

124.   In failing to stop the unconstitutional actions of Defendant Kilgore despite being in a position to do so, Defendant Bishop acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

125.   As a direct and proximate result of the violations of his constitutional rights and Defendant Bishop's deliberate indifference to the unconstitutional actions of Defendant Kilgore against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

### COUNT X
### Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to FDA

126.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

127.   Defendant FDA was acting under the color of state law at all times relevant on September 4, 2022.

128.   Defendant FDA is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights.

129.   Defendant FDA was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb when Defendant Holcomb delivered blows onto Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound.

130.   Despite Defendant FDA being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant FDA failed to do so.

131.   In failing to stop the unconstitutional actions of Defendant Holcomb despite being in a position to do so, Defendant FDA acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

132.   As a direct and proximate result of the violations of his constitutional rights and Defendant FDA's deliberate indifference to the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

**COUNT XI**
**Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to FDB**

133.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

134.   Defendant FDB was acting under the color of state law at all times relevant on September 4, 2022.

135.   Defendant FDB is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights.

136.   Defendant FDB was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb when Defendant Holcomb delivered blows onto Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound.

137.   Despite Defendant FDB being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant FDA failed to intervene though he was in a position to do so and ratified the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

138.   In failing to stop the unconstitutional actions of Defendant Holcomb despite being in a position to do so, Defendant FDB acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

139.   As a direct and proximate result of the violations of his constitutional rights and Defendant FDB's deliberate indifference to the unconstitutional actions of

Defendant Holcomb against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

## COUNT XII
### Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to FDC

140.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

141.   Defendant FDC was acting under the color of state law at all times relevant on September 4, 2022.

142.   Defendant FDC is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights.

143.   Defendant FDC was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb when Defendant Holcomb delivered blows onto Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound.

144.   Despite Defendant FDC being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, he failed to do so.

145.   In failing to stop the unconstitutional actions of Defendant Holcomb despite being in a position to do so, Defendant FDC acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

146.   As a direct and proximate result of the violations of his constitutional rights and Defendant FDC's deliberate indifference to the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

### COUNT XIII
### Violation of Fourth Amendment Rights and Guarantees & Failure to Intervene as to FDD

147.   Plaintiff Hawkins, without waiver of any preceding allegation further alleges:

148.   Defendant FDD was acting under the color of state law at all times relevant on September 4, 2022.

149.   Defendant FDD is liable for failing to intervene and prevent the violation of Plaintiff Hawkins's constitutional rights by fellow officers.

150.   Defendant FDD was in a position to intervene in the unlawful constitutional violations carried out by Defendant Holcomb when Defendant Holcomb delivered blows onto Plaintiff Hawkins's body while Plaintiff Hawkins was restrained on face down on the ground, arms bound.

151.   Despite Defendant FDD being in a position to intervene to stop the violation of Plaintiff Hawkins's clearly established constitutional right to be free from unnecessary excessive force, Defendant FDD failed to intervene though he was in a position to do so.   FDD encouraged and ratified the unconstitutional actions of

Defendant Holcomb against Plaintiff Hawkins while he was in a compliant, restrained position and while he was not a threat to officers or the general public.

152.   In failing to stop the unconstitutional actions of Defendant Holcomb despite being in a position to do so, Defendant FDD acted with deliberate indifference regarding the constitutional rights of Plaintiff Hawkins.

153.   As a direct and proximate result of the violations of his constitutional rights and Defendant FDD's deliberate indifference to the unconstitutional actions of Defendant Holcomb against Plaintiff Hawkins on September 4, 2022, Plaintiff Hawkins has and continues to suffer injury.

## COUNT XIV
## Failure to Train as to Defendant Shaver

154.   Plaintiff Hawkins further alleges:

155.   The events that give rise to this lawsuit shows a deliberate indifference on the part of the Cherokee County Sheriff's Office (CCSO) to properly train its deputies.

156.   Specifically, the CCSO, and Defendant Shaver as the chief policy maker has failed to train its employees to refrain from using deadly force (in this instance the repeated elbow strikes by Defendant Holcomb) a CCSO employee against a restrained non-combative subject.

157.   By their own admission, the CCSO ratifies such use of excessive force by its deputies.

158.   Two weeks after the occurrence of the events that give rise to this lawsuit, and only after the release of video showing the events, the CCSO issued a public statement that stated in pertinent part that "[A]n and an off-duty deputy deployed three elbow strikes, a technique officers are trained in the academy, to Hawkins and he then complied and was cuffed."

159.   This statement was issued despite the CCSO accompanying the statement with the bystander video that clearly shows a noncombative, nonresistant Plaintiff Hawkins lying face down being restrained by officers as Defendant Holcomb rains elbows down to the back of Plaintiff Hawkins's head.

160.   The statement issued by the CCSO, when juxtaposed against the accompanying video shows that a clear deliberate indifference to excessive force by its deputies exists in the CCSO.

161.   As the chief policy maker for the CCSO, Defendant Shaver, through the release of the statement ratifies Defendant Holcomb's use of excessive force.

162.   After the occurrence of the events giving rise to this lawsuit, Plaintiff Hawkins and his father contacted Defendant Shaver to lodge a formal complaint against Defendant Holcomb for his actions on September 4, 2022.

163.   Specifically, Plaintiff Hawkins complained to Defendant Shaver that Defendant Holcomb was heavily intoxicated on September 4, 2022.

164.   Plaintiff Hawkins was informed by Defendant Shaver that his deputies were on duty twenty-four hours per day and further, are allowed to consume alcoholic beverages.

165.   The need to train deputies not to use excessive force on noncombative, restrained subjects is well known and obvious.

166.   The United States Supreme Court has repeated opined that excessive force used on compliant individuals is a violation of that individual's constitutional rights and thus, CCSO knew or should have known that it has a duty to ensure that its deputies operate within the confines of the law.

167.   The CCSO, through Defendant Shaver has its chief policy maker has breached that duty to the detriment of Plaintiff Hawkins.

168.   Further, it is patently obvious that Defendant Shaver should have a policy in place that forbids the carrying out of official law enforcement actions while in a drunken state.

169.   Despite the obvious need for such a policy, Defendant Shaver, as the chief policymaker of the CCSO has established no such policy, the lack of which cased injuries to Plaintiff Hawkins on September 4, 2022.

## COUNT XV
## <u>Failure to Supervise as to Defendant Cedar Bluff</u>

170.   Without waiver of the preceding allegations, Plaintiff Hawkins further alleges:

171.   Defendant Cedar Bluff is under a constitutional duty to ensure that all the police officers in the Cedar Bluff Police Department, act in a manner so as to preserve the constitutional rights of individuals of the general public.

172.   Defendant Cedar Bluff is under a duty to properly train, supervise, and discipline its officers and to ensure that its police officers operate in a lawful manner, preserving the rights, privileges, and amenities guaranteed to individuals by the Constitution of the United States and the State of Alabama.

173.   The actions of the Defendant Bishop, employed by Defendant Cedar Bluff complained of herein were unjustified, unreasonable, unnecessary, unconstitutional, excessive, and constitutes an unreasonable seizure effectuated through the use of unnecessary excessive force and unreasonable force and the deprivation of Plaintiff Hawkins's due process protections in violation of the rights secured by the Fourth Amendment of the Constitution of the United States.

174.   Defendant Cedar Bluff had and has a duty to supervise and prevent its officers from violating Plaintiff Hawkins's constitutional rights.   Defendant Cedar Bluff failed in its duty to properly train its officers.   That lack of training led to the use of excessive force upon Plaintiff Hawkins by a drunken Defendant Bishop.

175.   Defendant Cedar Bluff is directly liable for the violations of Plaintiff Hawkins's constitutional rights due to the following policies or lack thereof, or practices, or customs which were in effect on September 4, 2022, and which were a

moving force behind Defendant Bishop's violations of Plaintiff Hawkins's constitutional rights:

a. Defendant Cedar Bluff failed to adequately and properly train and educate their officers with respect to procedures to employ when interacting with citizens, including stops, seizures, detentions, and arrests, the proper use of force, creating an atmosphere where illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiff Hawkins;

b. Defendant Cedar Bluff failed to properly supervise, train and discipline officers of the Cedar Bluff Police Department ("CBPD") with respect to the violations of the Constitution of the United States, the Constitution of Alabama, and their own policies to the extent they exist, regarding the use of force, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference to the welfare of the public at large, including Plaintiff Hawkins;

c. Defendant Cedar Bluff failed to adequately monitor and evaluate the performance of their officers and their compliance with the laws and policies, practices, and customs with respect to the use of force, and consumption of alcohol, with deliberate indifference and reckless disregard to the public at large, including Plaintiff Hawkins.

d. Defendant Cedar Bluff and the CBPD have a practice, policy, or custom of exonerating officers regarding complaints of misconduct including but not limited to the use of force, thus creating an atmosphere where illegal and unconstitutional behavior is condoned, tolerated or approved in

deliberate indifference and reckless disregard to the rights of the public at large, including Plaintiff Hawkins;

e.     The CBPD, a department and arm of Defendant Cedar Bluff has a policy, practice or custom of allowing its officers to use excessive and/or unreasonable force without fear of discipline creating an atmosphere where such behavior is accepted, approved, and ratified, in reckless disregard and deliberate indifference to the welfare of the public at large, including Plaintiff Hawkins.

176.   Accordingly, Defendant Cedar Bluff ratified, condoned, and approved the conduct of Defendant Bishop that occurred on September 4, 2022, in all aspects of the deprivation of the constitutional rights afforded to Plaintiff Hawkins.

177.   As a direct a proximate result of the forgoing and lack of policies, practices, and customs of the CBPD, Defendant Cedar Bluff is responsible for the violations of the constitutional rights by Defendant Bishop which were substantially certain to occur and were a moving force behind the violations of Plaintiff Hawkins's constitutional rights.

## COUNT XVI
## Failure to Supervise as to Defendant Centre

178.   Without waiver of the preceding allegations, Plaintiff Hawkins further alleges:

179.   Defendant Centre is under a constitutional duty to ensure that all the police officers in the Centre Police Department ("CPD"), act in a manner so as to preserve the constitutional rights of individuals of the general public.

180.   Defendant Centre is under a duty to properly train, supervise, and discipline its officers and to ensure that its police officers operate in a lawful manner, preserving the rights, privileges, and amenities guaranteed to individuals by the Constitution of the United States and the State of Alabama.

181.   The actions and inactions of the Defendant Kilgore and Defendant Troxtel, employed by Defendant Centre, complained of herein were unjustified, unreasonable, unnecessary, unconstitutional, excessive, and constitutes an unreasonable seizure effectuated through the use of unnecessary excessive force and unreasonable force and the deprivation of Plaintiff Hawkins's due process protections in violation of the rights secured by the Fourth Amendment of the Constitution of the United States.

182.   Defendant Centre had and has a duty to supervise and prevent its officers from violating Plaintiff Hawkins's constitutional rights.  Defendant Centre failed in its duty to properly train its officers.  That lack of training led to the use of excessive force upon Plaintiff Hawkins by Defendant Kilgore and the failure to intervene by Defendant Troxtel.

183.   Defendant Centre is directly liable for the violations of Plaintiff Hawkins's

constitutional rights due to the following policies or lack thereof, or practices, or

customs which were in effect on September 4, 2022, and which were a moving force

behind Defendant Kilgore's violations of Plaintiff Hawkins's constitutional rights,

and Defendant Troxtel's failure to intervene:

   f.   Defendant Centre failed to adequately and properly train and educate their officers with respect to procedures to employ when interacting with citizens, including stops, seizures, detentions, and arrests, the proper use of force, creating an atmosphere where illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiff Hawkins;

   g.   Defendant Centre failed to properly supervise, train and discipline officers of the CPD with respect to the violations of the Constitution of the United States, the Constitution of Alabama, and their own policies to the extent they exist regarding the use of force, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference to the welfare of the public at large, including Plaintiff Hawkins;

   h.   Defendant Centre failed to adequately monitor and evaluate the performance of their officers and their compliance with the laws and policies, practices, and customs with respect to the use of force, and consumption of alcohol, with deliberate indifference and reckless disregard to the public at large, including Plaintiff Hawkins.

      i.      Defendant Centre and the CPD have a practice, policy, or custom of exonerating officers regarding complaints of misconduct including but not limited to the use of force, thus creating an atmosphere where illegal and unconstitutional behavior is condoned, tolerated or approved in deliberate indifference and reckless disregard to the rights of the public at large, including Plaintiff Hawkins;

      j.      The CPD, a department and arm of Defendant Centre has a policy, practice or custom of allowing its officers to use excessive and/or unreasonable force without fear of discipline creating an atmosphere where such behavior is accepted, approved, and ratified, in reckless disregard and deliberate indifference to the welfare of the public at large, including Plaintiff Hawkins.

184.   Accordingly, Defendant Centre ratified, condoned and approved the conduct of Defendant Kilgore and Defendant Troxtel that occurred on September 4, 2022 in all aspects of the deprivation of the constitutional rights afforded to Plaintiff Hawkins.

185.   As a direct a proximate result of the forgoing and lack of policies, practices, and customs of the CPD, Defendant CPD is responsible for the violations of the constitutional rights by Defendant Kilgore and Defendant Troxtel which were substantially certain to occur and were a moving force behind the violations of Plaintiff Hawkins's constitutional rights.

## COUNT XVII
### Failure to Supervise as to Defendant Leesburg

186.   Without waiver of the preceding allegations, Plaintiff Hawkins further alleges:

187.   Defendant Leesburg is under a constitutional duty to ensure that all the police officers in the Leesburg Police Department ("LPD"), act in a manner so as to preserve the constitutional rights of individuals of the general public.

188.   Defendant Leesburg is under a duty to properly train, supervise, and discipline its officers and to ensure that its police officers operate in a lawful manner, preserving the rights, privileges, and amenities guaranteed to individuals by the Constitution of the United States and the State of Alabama.

189.   The actions and inactions of the FDA and FDB, employed by Defendant Leesburg, complained of herein were unjustified, unreasonable, unnecessary, unconstitutional, excessive, and constitutes an unreasonable seizure effectuated through the use of unnecessary excessive force and unreasonable force and the deprivation of Plaintiff Hawkins's due process protections in violation of the rights secured by the Fourth Amendment of the Constitution of the United States.

190.   Defendant Leesburg had and has a duty to supervise and prevent its officers from violating Plaintiff Hawkins's constitutional rights.  Defendant Leesburg failed in its duty to properly train its officers.  That lack of training led to the use of the failure to intervene against excessive force visited upon Plaintiff Hawkins.

191.   Defendant Leesburg is directly liable for the violations of Plaintiff Hawkins's constitutional rights due to the following policies or lack thereof, or practices, or customs which were in effect on September 4, 2022, and which were a moving force behind Defendant FDA's and Defendant FDB's failure to intervene against Defendant Bishop's violations of Plaintiff Hawkins's constitutional rights:

  k. Defendant Leesburg failed to adequately and properly train and educate their officers with respect to procedures to employ when interacting with citizens, including stops, seizures, detentions, and arrests, the proper use of force, creating an atmosphere where illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiff Hawkins;

  l. Defendant Leesburg failed to properly supervise, train and discipline officers of the LPD with respect to the violations of the Constitution of the United States, the Constitution of Alabama, and their own policies to the extent they exist regarding the use of force, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference to the welfare of the public at large, including Plaintiff Hawkins;

  m. Defendant Leesburg failed to adequately monitor and evaluate the performance of their officers and their compliance with the laws and policies, practices, and customs with respect to the use of force, and consumption of alcohol, with deliberate indifference and reckless disregard to the public at large, including Plaintiff Hawkins.

n.      Defendant Leesburg and the LPD have a practice, policy, or custom of exonerating officers regarding complaints of misconduct including but not limited to the use of force, thus creating an atmosphere where illegal and unconstitutional behavior is condoned, tolerated or approved in deliberate indifference and reckless disregard to the rights of the public at large, including Plaintiff Hawkins;

o.      The LPD, a department and arm of Defendant Leesburg has a policy, practice or custom of allowing its officers to use excessive and/or unreasonable force without fear of discipline creating an atmosphere where such behavior is accepted, approved, and ratified, in reckless disregard and deliberate indifference to the welfare of the public at large, including Plaintiff Hawkins.

192.   Accordingly, Defendant Leesburg ratified, condoned and approved the conduct of Defendant FDA and Defendant FDB that occurred on September 4, 2022 in all aspects of the deprivation of the constitutional rights afforded to Plaintiff Hawkins.

193.   As a direct a proximate result of the forgoing and lack of policies, practices, and customs of the LPD, Defendant Leesburg is responsible for the violations of the constitutional rights by Defendant FDA and Defendant FDB which were substantially certain to occur and were a moving force behind the violations of Plaintiff Hawkins's constitutional rights.

## **DAMAGES**

194.   As a result of the complained of acts herein, Plaintiff Hawkins has suffered

economic and noneconomic damages to-wit:

      a.  Physical injuries including Taser puncture wounds, head injuries, neck injuries, abrasions, contusions, scrapes, bruising and concussion-like injuries;

      b.  Loss of his civil right to be free from the use of excessive force by law enforcement officers;

      c.  Loss of his civil right to be free from unconstitutional and unlawful seizure;

      d.  Emotional distress;

      e.  Mental anguish;

      f.  Pain and suffering;

      g.  Nightmares; and

      h.  Medical cost for treatment

## **PRAYER FOR RELIEF**

195.   The Plaintiff prays for the following forms of relief:

196.   A grant of compensatory damages against the defendants jointly and severally

for the injuries, damages, and losses listed herein;

197.   A grant of punitive damages in an amount to be determined by a jury so as to

deter conduct such as alleged herein in the future;

198.   A grant of all costs, fees, expenses, and attorney fees associated with bringing this action; and

199.   All other such relief this Court deems just and equitable.

## JURY DEMAND

200.   Plaintiff Hawkins demands trial by struck jury on all issues of fact.

Respectfully submitted,

*s/ H. Gregory Harp*
H. Gregory Harp (asb-0904-t75h)
GREGORY HARP LLC
Post Office Box 26
Trussville, Alabama 35173
205.291.0088
gh@gregoryharplaw.com